# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

URSZULA BRUMER,
MALGORZATA KASPRZAK-GUZEK,

     Plaintiffs,

v.

LAURIE ANN GRAY,

     Defendant.

Case No.: 3:17-cv-00576-MMD-WGC

**Order**

Re: ECF No. 39

Before the court is defendant Laurie Ann Gray's Motion to Preclude Untimely Disclosed Damages. (ECF Nos. 39, 39-1 to 39-16.)[1] Plaintiffs Urszula Brumer and Malgorzata Kasprzak-Guzek filed a response. (ECF Nos. 43, 43-1 to 43-28.) Gray filed a reply. (ECF No. 48.) The court held a hearing on the motion on June 17, 2019 (*see* minutes at ECF No. 54), and issues the instant order granting the motion in part and denying it in part.

## I. BACKGROUND

Plaintiffs are citizens of Poland and sued Gray, a resident of Nevada, for negligence and negligence per se related to a rear-end motor vehicle accident that occurred in Douglas County, Nevada, on September 19, 2017. They seek to recover property damage and damages for injuries including cervical/thoracic/lumbar injuries, medical bills, pain, suffering, worry, anxiety,

---

[1] The motion was filed as a Motion to Preclude Untimely Disclosed Damages, and Motion for Partial Summary Judgment for Lack of Damages, and the Clerk's Office docketed it as two separate motions: (1) to preclude untimely disclosed damages; and (2) for partial summary judgment for lack of damages. District Judge Du referred the former to the undersigned. As will be discussed below, the court's findings on the motion to preclude untimely disclosed damages renders the partial summary judgment motion for lack of damages moot.

depression, emotional distress and loss of enjoyment of life. (ECF No. 1.) On April 8, 2019, Gray filed a stipulation for liability, so damages are the only remaining issue. (ECF No. 41.)

Plaintiffs received treatment related to this accident in the United States and in Poland, which has complicated the discovery process in this matter.

Plaintiffs served their initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(A) on November 21, 2017, and, among other things, identified various documents including medical records and bills, but stated the damages computation was unknown and discovery was continuing. (ECF Nos. 39-1, 43-2.)

Gray served her First Set of Requests for Production of Documents (RFP) on Plaintiffs on December 7, 2018. Request 16 asked Plaintiffs to produce all invoices, bills, receipts or other documents that showed medical expenses incurred in the accident. (ECF No. 39-6, RFP No. 16 to Brumer; ECF No. 39-7 at 7, RFP No. 17 to Kasprzak.) Plaintiffs responded to those requests on February 6, 2018, by identifying certain documents including medical records and bills. (ECF No. 39-6 at 20, Brumer response to RFP No. 16); ECF No. 39-7 at 20, Kasprzak's response to RFP No. 16.)

Gray's first set of RFPs also requested a damages computation under Federal Rule of Civil 26(a)(1)(A)(iii). (ECF Nos. 39-6 at 7, RFP No. 17 to Brumer; ECF No. 39-7 at RFP No. 17 to Kasprzak.) In response, Plaintiffs referred Gray to the response to RFP No. 16, which had identified certain documents, and said discovery was ongoing and Plaintiff reserved the right to amend or supplement the response. (ECF No. 39-6 at 20, Brumer response to RFP No. 17; ECF No. 39-7 at 20, Kasprzak's response to RFP No. 17.)

Plaintiffs were also asked to itemize the expenses they claimed as damages in interrogatories. (ECF No. 39-4 at 23, Interrogatory No. 22 to Brumer; ECF No. 39-5 at 13,

Interrogatory No. 22 to Kasprzak.) In responses served February 6, 2018, Plaintiffs again identified various documents that included medical records and bills. (ECF No. 39-4 at 24, Brumer response to Interrogatory No. 22; ECF No. 39-5 at 31, Kasprzak response to Interrogatory No. 22.)

One month later, on March 8, 2018, Gray served a second set of RFPs on Plaintiffs. (ECF Nos. 39-13, 39-14.) There were only two requests: RFP No. 22 asked for a computation of damages under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). RFP No. 23 asked for all invoices, receipts, bills or other documents that purported to show any damage they claimed to have sustained as a result of the accident. There is a dispute among counsel as to what transpired with respect to Plaintiffs' obligation to provide responses to these requests. Gray's counsel at the time, Scott L. Rogers, Esq., states that he spoke to Plaintiffs' counsel, Jakub Medrala, Esq., and Mr. Medrala requested an extension of time to respond until May 24, 2018, and attaches a copy of the email confirming the extension. (Rogers Decl., ECF No. 39-15 at 3 ¶ 6.) He asserts no responses were ever served. (*Id*. ¶ 7.)

Mr. Medrala, on the other hand, acknowledges service of the requests on March 8, 2018, and the extension granted until April 24, 2018. (Medrala Decl., ECF No. 43-1 at ¶¶ 11-12.) He maintains, however, that he had a discussion with Mr. Rogers on April 24, 2018, concerning difficulties obtaining the Plaintiffs' medical records from Poland. (*Id*. ¶ 13.) He asserts that Mr. Rogers acknowledged Plaintiffs' difficulty in providing the damages calculation, and agreed that Plaintiffs would continue to attempt to obtain their complete medical records from Poland, and that the parties would work together to secure the cooperation of Plaintiffs' Polish medical providers. (*Id*. ¶ 14.) They did not set a new deadline for responses, but Mr. Medrala insists it was understood that Plaintiffs would not be obligated to respond until they secured the cooperation from the Polish medical providers and obtained complete medical records. (*Id*. ¶ 15.)

Gray does not address Mr. Medrala's statements on this issue in her reply brief, but instead simply repeats the same argument that Plaintiffs did not respond to the second set of requests for production of documents. Mr. Loosvelt's second declaration states that Mr. Medrala never suggested an agreement "never to provide disclosures until international discovery was conducted," but does not indicate that he inquired of Mr. Rogers whether there was an agreement on this issue between counsel. (ECF No. 48 at 20 ¶ 6.)

Brumer and Kasprzak were deposed on May 11, 2018. (ECF Nos. 43-3, 43-4.)

Gray served her second supplemental disclosures under Rule 26(a)(1) on May 30, 2018, that disclosed, among other things: medical and billing records for Brumer from Integrated Pain Specialists for services on May 9, 2018 and September 24, 2015 (DEF 108-157, 158-162), and from Carson Valley Medical Center for service on September 19, 2015 (DEF 168-207); as well as medical and billing records from Kasprzak for service at Integrated Pain Specialists on September 24, 2015 (DEF 163-167). (ECF No. 43-6 at 8.)

The parties agreed to participate in the process of obtaining letters rogatory from this court to conduct discovery with respect to Plaintiffs' medical providers in Poland. (Medrala Decl., ECF No. 43-1 ¶¶ 18, 20; ECF No. 43-18.) To that end, Mr. Medrala retained a law firm in Poland to assist in the process. (Medrala Decl., ECF No. 43-1 ¶ 19.)

Plaintiffs served their first supplemental disclosures under Rule 26(a) on June 25, 2018, disclosing, among other things, additional medical records and bills for Brumer including Dr. Marta Wisniewka's medical opinion (BRUMER 250), Dr. Robert Gasik's medical opinion (BRUMER 251-252), Magdalena Leszczynska's opinion (BRUMER 253), and records from Carson Valley Medical Center from services on September 19, 2015 (BRUMER 254-64). (ECF No. 43-7 at 10.) They also disclosed additional medical records and bills for Kasprzak including:

Dr. Andrew Cash (BRUMER 318-320, 340-343), and Dr. Charlie Y. Nahm (BRUMER 327-339). (ECF No. 43-7 at 10.)

With respect to the damages information, they again stated that the damages computation was unknown and discovery was continuing. (ECF No. 43-7 at 11.)

On July 3, 2018, Dr. Cash, a Board-Certified Orthopedic Surgeon and Fellowship Trained Spine Surgeon, authored a letter containing his future surgical recommendations and cost estimates for Kasprzak. (ECF No. 43-8 at 4-6.) Dr. Cash opined that Plaintiff will require cervical reconstruction at C5-6 and lumbar reconstruction at L5-S1 to ameliorate her symptoms. The cost estimate for the first surgery—the single level anterior cervical discectomy and fusion at C5-6— is $279,735. The cost estimate of the second surgery—the single level anterior posterior lumbar reconstructive fusion with decompressive laminectomy at L5-S1—is $402,701. The total cost estimate for both surgeries is $682,436. Mr. Medrala sent this letter to Mr. Rogers that same day, and asked to touch base to talk about the Polish discovery issues. (ECF No. 43-8 at 2.)

Dr. Cash was deposed on August 7, 2018, and was questioned about the July 3, 2018 surgical cost letter he authorized for Kasprzak by Gray's counsel. (ECF No. 43-10 at 16-17, depo. trans. pp. 55:6-25, 56:1, 59:6-20.) Mr. Medrala also questioned Dr. Cash about the cost letter, and asked whether he thought Kasprzak would need to undergo any additional surgeries in the future assuming she moved forward with the two initially recommended in his surgical cost letter. (ECF No. 43-10 at 17, depo. trans. p. 60:6-15.) Dr. Cash testified that if she underwent those two initial surgeries identified in the surgical cost estimate, for both surgeries, adjacent level breakdowns would probably occur and would more likely than not require adjacent level surgery fusion in the cervical and lumbar spine. (ECF No. 43-10 at 18, depo. trans. pp. 61:3-25, 62:1-20.)

5

Dr. Cash apparently authored a second letter on August 22, 2018, where he stated his opinion that if Plaintiff had the first two surgeries, she would require additional surgeries of the cervical and lumbar spine at the adjacent levels. (*See* Plaintiffs' expert witness disclosure, ECF No. 43-11 at 3, identifying a report by Dr. Cash dated August 22, 2018.) Mr. Medrala clarified at the hearing that Dr. Cash never provided an estimate as to the cost of these additional surgeries, and that in the February 20, 2019 damages computation, Mr. Medrala just made what in his view was a "conservative estimate" by allotting the same amount that Dr. Cash estimated for the initial two future surgeries he recommended.

On August 24, 2018, Plaintiffs served their expert disclosure, designating Dr. Cash as their expert, and produced, among other things, the July 3, 2018 surgical cost letter. (ECF No. 43-11.)

Between the end of June and August of 2018, the parties were in the process of drafting a motion to be filed in this court requesting the issuances of letters rogatory so that they could pursue discovery from Plaintiffs' medical providers in Poland. (*See* ECF No. 43-18.)

Plaintiffs served their second supplemental disclosures on November 7, 2018. (ECF No. 43-12.) It included the identification of additional medical and billing records for Kasprzak and Brumer from treatment in Poland and the United States. Under the damages information category, Plaintiffs again stated that the damages computation was unknown and discovery was continuing. (ECF No. 43-12 at 12.)

The parties participated in a settlement conference before the Honorable Robert A. McQuaid, Jr., recalled United States Magistrate Judge, on November 15, 2018, but were unsuccessful in settling the case. (ECF No. 33.) The parties filed a joint status report the following day. (ECF No. 34.) In that status report, the parties jointly represented that they had agreed to

finalize a joint motion for issuance of letters rogatory to seek the assistance of the Polish courts in verifying and obtaining additional medical records from Plaintiffs' Polish medical providers, and would file such motion by November 21, 2018. (*Id*. at 2.)

Following the settlement conference, Mr. Medrala continued his efforts to work with Gray's counsel, now Ryan Loosvelt, Esq., to get the motion for issuance of letters rogatory filed. (ECF No. 43-19.) The parties participated in a status conference on November 21, 2018. (ECF No. 35.) The parties reiterated that they were in the process of finalizing the joint motion for issuance of letters rogatory. The court acknowledged expressed concern that the process the parties were pursuing with the motion for issuance of letters rogatory would continue to delay the case if the parties did not move expeditiously. The court acknowledged and advised counsel that these motions were cumbersome and time consuming. With that in mind, the court granted a 120-day extension of the discovery deadline, until February 20, 2019, and stated that barring unforeseen and extenuating circumstances, there would be no further extensions. (*Id*.)

When Mr. Medrala initially communicated with Mr. Loosvelt following the status conference, all indications were that Gray was still interested in cooperating with Plaintiffs on obtaining discovery in Poland, with Mr. Loosvelt representing to Mr. Medrala on November 27, 2018, and December 4, 2018, that he would get final revisions to Mr. Medrala forthwith. (ECF No. 43-19 at 5-6; ECF No. 43-22 at 2.)

Mr. Medrala subsequently extended multiple communications to Mr. Loosvelt, regarding the joint motion for issuance of letters rogatory, but they went unreturned. Mr. Medrala also circulated a draft of the motion to Mr. Loosvelt, but Mr. Loosvelt apparently never got back to him with final revisions. (Medrala Decl., ECF No. 43-1 ¶¶ 39, 40, 42, 44; ECF No. 43-20; ECF No.

43-23 (December 20, 2018 email asking Mr. Loosvelt to call him); ECF No. 43-24 (January 22, 2019, asking for any updates on the motion for letters rogatory).)

In her reply brief, Gray states that she "elected not to proceed" with the motion because there was not sufficient time remaining to gain compliance of Plaintiffs' Polish medical providers through this procedure ECF No. 48: 9-12), but it does not appear that this was ever communicated to Mr. Medrala. Nevertheless, Mr. Medrala never moved forward with the motion for issuance of letters rogatory on his own.

On February 1, 2019, Gray served her designation of rebuttal expert witness and documents, identifying Dr. James S. Forage as her rebuttal witness and producing his testimony and reports. (ECF No. 43-13.)  His report indicates that he reviewed Dr. Cash's reports and stated his rebuttal opinions. (ECF No. 43-13 at 19.)

On February 20, 2019, the last day of discovery, Plaintiffs served their third supplemental disclosures under Rule 26(a). The disclosures identified additional medical records and bills for Kasprzak and Brumer including those from DCP Holdings, LLC/West Surgery Center for Kasprzak, BRUMER 516-529[2].

---

[2] These records included a bill from West Sunset Surgery Center for Kasprzak for surgical procedures performed on May 17, 2018, in the amount of $22,274.50. This bill will also be discussed in detail below, but Mr. Medrala clarified at the hearing that this was a bill from the surgery center where surgery was performed by Kasprzak's medical provider, Dr. Nahm, who had previously been disclosed in Plaintiffs' first supplemental disclosure, and whom Gray declined to depose.

The third supplemental disclosures provided the following computation of damages:

1. Special Damages
    a) Malgorzata Kasprzak-Guzek

| | |
|---|---|
| US Treatment | $41,807.50 |
| Future U.S. Treatment | $682,436.00 x 2[3] |
| Foreign Treatment | $3,832.10 (U.S.)[4] |
| TOTAL | $1,410,511.60 |

    b) Urszula Brumer

| | |
|---|---|
| U.S. Treatment | $9,803.94 |
| Foreign Treatment | $5,694.00 (U.S.) |
| Future Treatment | $50,000.00 |
| Property Loss | $1,308.89 (U.S.)[5] |
| TOTAL | $66,806.83 |

2. General Damages

| | |
|---|---|
| a) Malgorzata Kasprzak-Guzek | $2,821,023.20 |
| b) Urszula Brumer | $150,000.00 |

(ECF No. 43-15 at 13-14.)

Gray's rebuttal expert, Dr. Forage, was deposed (outside the discovery deadline, on the agreement of the parties) on February 26, 2019. (ECF No. 43-16.) Dr. Forage was questioned about Dr. Cash's surgical cost report and his estimate of the cost of the cervical and lumbar surgeries. (*Id.* at 12-13, depo. trans. pp. 34:21-25, 36-39:5.)

---

[3] As will be discussed in further detail below, at the hearing, the court questioned Mr. Medrala as to why the $682,436 figure from Dr. Cash's surgical cost estimate regarding the recommended cervical and lumbar surgeries was doubled for Kasprzak's future treatment, and he explained this was because Dr. Cash testified that if Kasprzak underwent the first two recommended surgeries, she would more likely than not require additional surgeries to the cervical and lumbar spine. He admitted that Dr. Cash never provided a cost estimate for these additional surgeries, but he took it upon himself to estimate the costs. He stated that he was being conservative in estimating the future cost of those surgeries that would occur (if at all) many years down the road as the same as the initial two surgeries.

[4] These are the out-of-pocket costs paid by Plaintiffs, and does not include the value of services provided by the Polish government or insurance in Poland.

[5] Mr. Medrala clarified at the hearing that this entry is for Brumer's expenses incurred in having to cancel a trip to Costa Rica due to the accident that were disclosed in the initial disclosures.

Dr. Cash was deposed again on March 7, 2019 (again outside the discovery deadline, by agreement of the parties). (ECF No. 43-17.) He was questioned further about his surgical recommendations and surgical cost estimate letter. (*Id.* at 9-12.) He was also asked about Dr. Forage's opinions. (*Id.* at 12-16.) He was not asked by Gray's counsel or Mr. Medrala about additional surgeries recommended beyond the initial cervical and lumbar surgeries identified in his July 3, 2018 surgical cost report, or the estimated costs of such surgeries.

On April 8, 2019, Gray filed the stipulation as to liability as well as the motions seeking to exclude Plaintiffs' damages. (ECF Nos. 39, 40, 41.)

## II. DISCUSSION

### A. Summary of Argument

Gray argues that Plaintiffs waited until the last day of discovery to provide their computation of damages; therefore, they should be precluded from seeking damages at trial under Federal Rule of Civil Procedure 37(c)(1) (and as a result, granted summary judgment for lack of damages). In addition, she asserts that she is entitled to recover reasonable attorney's fees and costs incurred in filing this motion. In her reply, Gray seeks alternative relief: exclusion of all damages that were not disclosed in response to written discovery; or, exclusion of all damages that were not fairly disclosed prior to the close of discovery, in which case she should be able to depose Plaintiffs and the relevant doctors and experts. (*See* ECF No. 48 at 4:17-26, 12-18.)

Plaintiffs argue that they faced challenges obtaining medical and billing records from Plaintiffs' treating providers in Poland. As a result, they stated in their initial, first and second supplemental disclosures that damages were unknown. They contend that Gray was aware of this and agreed to cooperate in conducting discovery abroad. Plaintiffs also argue that when a party seeks to exclude all damages, a showing of willfulness or bad faith is required, and that standard

is not met here. In addition, Plaintiffs argue that Gray violated the same rules she seeks to enforce when on the last day of discovery she identified a surveillance video and report.[6]

The court will now address the legal standards governing an asserted failure to timely disclose a damages computation, and then will provide its analyses and conclusions, addressing the special and general damages categories separately.

## B. Legal Standards and Application

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures, and states that a party must, without awaiting a discovery request, provide to the other parties certain information including, among other things, "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii).

"A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Fed. R. Civ. P. 26(a)(1)(E).

After making initial disclosures under Rule 26(a) or responding to written discovery, a party has a duty to "supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and

---

[6] The court will not address this argument because it is not relevant to whether Plaintiffs' damages should be excluded. The court also notes that Plaintiffs' response improperly discussed settlement communications, which the court did not take into account in its determination of this motion. *See* LR 16-5.

if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A).

"'A major purpose' of the initial disclosure requirements 'is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information.'" *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing Fed. R. Civ. P. 26 Advisory Committee's note to 1993 amendments). The rule is intended to "help focus the discovery that is needed, and facilitate the preparation for trial or settlement." Advisory Committee notes to 1993 Amendments to Fed. R. Civ. P. 26(a).

Under Rule 37, "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction, the court … : (A) may order payment of the reasonable expenses, including attorney's fees caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(A)-(C). In other words, "Rule 37(c)(1) gives teeth to th[e] [Rule 26(a)] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Cop.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

The Advisory Committee notes to the 1993 amendments to Rule 37 describe the exclusion sanction as "self-executing" and "automatic." That said, courts are given "wide latitude" in the discretion to issue sanctions under Rule 37(c)(1). *R&R Sails,* 673 F.3d at 1245 (citations omitted); *Yeti*, 259 F.3d at 1106.

The rule contains "[t]wo express exceptions [that] ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Id*. (citing Fed. R. Civ. P. 37(c)(1)). The burden is on the disclosing party to show that a failure to disclose information was justified or harmless. *R&R Sails,* 673 F.3d at 1246 (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008); *Yeti,* 259 F.3d at 1107.

Moreover, Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *see also Design Strategy, Inc. v. Davis*., 469 F.3d 284, 296, 298 (2d Cir. 2006). In *Wendt*, the court identified several factors the court may consider in deciding whether to impose Rule 37(c)'s exclusion sanction: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to [other parties]; 4) the public policy favoring disposition of cases on their merits; and 5) the availability of less drastic sanctions." *Wendt*, 125 F.3d at 814.

Importantly, as Plaintiffs' opposition points out, when an exclusion sanction is tantamount to dismissal, willfulness or bad faith are factors the court must consider in deciding the appropriate level of sanction to impose. *R&R Sails,* 673 F.3d at 1247 (citations omitted); *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011).

With respect to Rule 26(a)(1)(A)(iii)'s damages computation disclosure requirement, courts have recognized that "[a] precise damages computation may not be possible until the plaintiff obtains some discovery, undergoes additional treatment, and, in some cases, obtains expert analysis." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017) (citing *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003)).

"Especially in the context of an injured plaintiff alleging ongoing or future medical damages, her claim for damages may not be static. At the outset of litigation, she may lack sufficient information to provide a precise measure of what damages she will claim at trial." *Id*. "[T]he key inquiry is whether the timing of the supplemental disclosure is reasonable based on when the information was available to the plaintiff." *Silvagni*, 320 F.R.D. at 241 (citation omitted). "The Rules provide for needed flexibility in supplementing the initial disclosure damages computation as the case progresses and circumstances evolve." *Id*.

Here, where liability has been admitted, the exclusion of all damages would end this case. Therefore, a showing of willfulness or bad faith is required to impose a sanction excluding all damages. Gray simply has not met this heightened standard. The court has previously acknowledged and apprised the parties that obtaining international discovery can be a particularly cumbersome process. There is evidence in the record that Mr. Medrala kept Gray's counsel apprised of the status of international discovery, retained a Polish attorney, and circulated several drafts of a motion for issuance of letters rogatory. The record further demonstrates that Gray had agreed to cooperate in the international discovery process and represented as much to the court. At some point, she elected not to proceed in that fashion without communicating that fact to Mr. Medrala. This gives credence to Plaintiffs' argument that they were not acting willfully or in bad faith when they stated in the initial and first and second supplemental disclosures that the damages computation was unknown.

While a specific damages computation was not provided in the initial and first and second supplemental disclosures, Plaintiffs did continue to supplement their disclosures with the medical and billing records both from the U.S. and Poland on which their damages claims are based.

In sum, the court concludes that there was no willfulness or bad faith on the part of Plaintiffs and Mr. Medrala in disclosing the specific damages computation on the last day of discovery in Plaintiffs' third supplemental disclosure. Therefore, Gray's request that *all* damages be excluded is denied.

Gray also asks the court to either limit Plaintiffs' damages to those disclosed in their discovery responses, or to those fairly cognizable from the timely produced records.

The court will not exclude components of Plaintiffs' damage computation where Gray was adequately aware of the basis of the computation either by prior disclosure and production of the medical and billing records that supply the basis for the damages calculation or when Gray otherwise had notice of the basis for the damages calculation. For these components of the damages computation, the disclosure of the damages computation on the last day of discovery can be considered harmless. In other words, while Plaintiffs could have provided an ongoing damages computation as to special damages as the case went along and as they obtained medical bills and records in the United States and from Poland, the failure to do so appears to be harmless insofar as Gray did have the majority of the medical bills and records as well as the expert report concerning Kasprzak's future damages (or at least the cost estimate for the two initial future surgeries recommended) that are relied on for the special damages computation.

On the other hand, those components of Plaintiffs' special damages computation disclosed in the third supplemental disclosure that Gray was not adequately apprised of prior to the disclosure will be excluded.

In evaluating whether any components of Plaintiffs' February 20, 2019 damages computation should be excluded, the court has considered the *Wendt* factors: the public interest in expeditious resolution of litigation; the court's need to manage its docket; the public policy of

resolving cases on their merits; and the availability of less drastic sanctions. The court finds that the approach the court is taking regarding exclusion is a balancing of all of the factors. The public interest in expeditious resolution of litigation and the court's need to manage its docket will be served by excluding those components of Plaintiffs' damages that were disclosed on the last day of discovery and for which Gray did not previously have notice of the basis for the computation. This is because the court will not have to re-open discovery as to those damages, which would likely include additional written discovery as well as depositions. The depositions would likely include additional expert depositions which could be difficult to schedule and would be costly. The cost and delay required for additional discovery would be significant because one of the damages components that court is excluding stems from the opinion of a Polish medical provider.

The court is cognizant of the public policy of resolving cases on their merits, and finds the court's approach would still achieve that goal because Plaintiffs are still able to present their case as to a large part of the damage components presented in their computation in the third supplemental disclosures.

Finally, the court finds that excluding only those damages components that Gray did not have notice of prior to the third supplemental disclosure is a much less drastic sanction than excluding all damages.

The court went through each of the special damages categories at the June 17, 2019 hearing, and identified those that had been previously disclosed or that Gray was sufficiently on notice of prior to the February 20, 2019 third supplemental disclosure and should not be precluded, as well as some that Gray was not sufficiently apprised of before the third supplemental disclosure was served and should be precluded. The court will discuss each category and its conclusions below.

Before proceeding with that analysis, the court notes that Rule 37(d) also provides for the imposition of sanctions where a party fails to respond to a request for production of documents. Fed. R. Civ. P. 37(d)(1)(A)(ii). Gray argues that Plaintiffs never responded to the second set of requests for production of documents that also asked for a computation of damages. There is a dispute, however, as to whether the parties agreed to defer serving these responses until they could obtain medical bills and records from Poland. Mr. Rogers' declaration states that the requests were served and no responses were received. Mr. Medrala states that he spoke with Mr. Rogers on the day of the extended deadline and they came to an agreement to defer serving the responses. Gray's reply brief does not address this assertion, and Mr. Loosvelt did not speak to this at the hearing. In any event, there does not appear to have been a meet and confer on this issue. Therefore, the court cannot conclude that Rule 37(d) sanctions are appropriate.

**C. Special Damages**

**1. Malgorzata Kasprzak-Guzek**

**a. U.S. Treatment: $41,807.50**

Gray argues that between the time of the previous disclosures and service of the third supplemental disclosures, Kasprzak's U.S. treatment damages increased by some $20,000. At the hearing, it was clarified that the $20,000 increase (and the only portion of this damages category that Gray specifically objected to) was in connection with a bill from the surgery center where Plaintiff underwent surgery with Dr. Nahm of Sunset Pain Consultants in 2018.

Dr. Nahm was disclosed in Plaintiffs' initial and first supplemental disclosures. (ECF Nos. 39-2 at 7, 39-3 at 7.) Medical records from Dr. Nahm were also disclosed and produced. (ECF No. 39-3 at 11, 39-2 at 10, BRUMER 327-339.) Kasprzak was deposed just before this surgery, and Gray's counsel was aware she was going to undergo the surgery.

At the hearing, Mr. Medrala represented that Gray had also subpoenaed the records from Dr. Nahm. Neither party could confirm whether the surgery center bill was produced in response to the subpoena. The court questioned Mr. Loosvelt as to whether Dr. Nahm had been deposed, and Mr. Loosvelt responded that Gray had elected not to depose Dr. Nahm.

The court inquired of Mr. Loosvelt what he would have done differently if he had received the surgery center bill from Plaintiffs' prior to the last day of discovery, and he said that he would have deposed Dr. Nahm and given the bill to his expert to review. The court found this position spurious since Gray had declined to depose Dr. Nahm regarding the necessity and reasonableness of the actual surgery he had performed, and regarding the reasonableness of the services provided at the surgery center.

The court finds that Gray was sufficiently on notice of Gray's surgery with Dr. Nahm, subpoenaed his records, and elected not to depose him; therefore, the surgery center bill will not be excluded.

### b. Foreign Treatment: $3,832.10

Gray did not voice any specific objection to the future treatment category of special damages other than that the calculation was disclosed on the last day of discovery. Gray does not refute, however, that she had the medical records and billing records that support the calculation previously; therefore, Kasprzak's foreign treatment damages will not be excluded.

### c. Future Treatment: $682,436 (x 2)

It is undisputed that Gray was aware of Dr. Cash's surgical cost letter recommending two initial future surgeries of the cervical and lumbar spine with an estimated combined cost of $682,436 as early as July 3, 2018, when Dr. Cash's report was emailed to Gray's counsel. This estimate was also disclosed with Dr. Cash's expert designation and Dr. Cash was deposed, twice.

Gray's rebuttal expert reviewed the surgical cost letter and testified as to his opinions on the cost letter. Therefore, Kasprzak may present evidence of future treatment damages in the amount of $682,436.

The issue is regarding the doubling of this amount for the additional future surgeries subsequently recommended by Dr. Cash (as stated in his deposition and in his August 22, 2018 report) at the adjacent levels in her spine. The trouble with this second $682,436 figure is that Dr. Cash never provided an estimate of the additional future surgeries. Instead, counsel just included this second figure in the February 20, 2019 damages computation as his own "conservative estimate" of what those additional future surgeries might cost. In contrast with the initial estimate, the estimate of the additional future surgeries was not made by Dr. Cash, and Gray was not on notice of it prior to the time the third supplemental disclosure was made.

There is no reason to re-open discovery on this issue because Kasprzak had ample opportunity to present a cost estimate regarding the future additional surgeries, but failed to do so.

Therefore, the second $682,436 future damages figure for Kasprzak will be excluded.

**3. Urszula Brumer**

**a. U.S. Treatment: $9,803.94**

Gray's objection is to approximately $3,800 of this amount that is attributed to a bill from Carson Valley Medical Center. Mr. Medrala represented at the hearing that these records were produced in response to Gray's own subpoena to this provider. Moreover, Gray knew that Brumer treated there from very early on in the case. Therefore, these damages will not be excluded.

**b. Foreign Treatment: $5,694**

Gray presented no specific objection to this damages category except that the computation was not made until the last day of discovery. As with Kasprzak's foreign treatment, Gray did not

dispute that she had the medical and billing records from Brumer's foreign treatment providers on which the calculation is based. Therefore, Brumer's damages for foreign treatment will not be excluded.

### c. Future Treatment: $50,000

Mr. Medrala explained that this figure was based on the opinions regarding future treatment for Brumer from Polish providers Dr. Robert Gasik and Ms. Magdalena Leszczynska, that were disclosed in Brumer's first and second supplemental disclosures. (ECF No. 39-2 at 7, 10; ECF No. 39-3 at 10.) The records are identified as BRUMER 251-252 (Gasik) (Gasik's records actually appear to be at BRUMER 250-252) and BRUMER 253 (Leszczynska). (*Id.*) The records themselves can be found at ECF No. 39-9 at 55-57 (Gasik) and 58 (Leszczynska). These records are in Polish. Mr. Medrala believes that they were provided to Gray in English too, as Plaintiffs provided translations of all the Polish records; however, the English versions were not before the court.

Mr. Medrala, who speaks and reads Polish, represented to the court that Gasik recommended physical therapy for Brumer, and Ms. Leszczynska opined that Plaintiff would need to attend physical therapy twice a week, at a price of what equates to $50 (U.S.) per week. Mr. Medrala confirmed that Ms. Leszczynska did not provide a statement or estimate of how long Brumer would need to attend physical therapy. Instead, the $50,000 figure is Mr. Medrala's own estimate that she would need to attend physical therapy twice a week for the rest of her life, and taking an average life expectancy, she would be expected to live 20 more years. In fact, Mr. Medrala confirmed that the record actually reflects that Ms. Leszczynska states that she was not able to state how long Brumer would require physical therapy.

The court concludes that this $50,000 figure was newly disclosed on the last day of discovery and Gray was not previously apprised of the basis for the computation because the records do not provide any estimate as to how long Brumer would require physical therapy or a cost estimate for future physical therapy treatment.

The court will not allow discovery to be re-opened for the purpose of eliciting an additional opinion on this issue. Ms. Leszczynska's opinion was disclosed with the first supplemental disclosure in June of 2018. Plaintiffs knew about it early on and could have sought a supplemental opinion with a cost estimate from her before the close of discovery. To re-open discovery to allow her to do so now would be costly because it would involve seeking international discovery in Poland, and would likely result in significant delay of this case.

Therefore, Brumer's future damages will be excluded.

### d. Property Loss: $1,308.89

Gray objected to this component of Brumer's special damages on the basis that it was not previously disclosed; however, Mr. Medrala clarified at the hearing that this item is for Brumer's expenses incurred in a cancelled trip to Costa Rica as a result of the accident. These expenses were disclosed in Brumer's initial disclosures (ECF No. 39-1 at 8, BRUMER 128-137); therefore, Gray had advance knowledge of the basis for this calculation. Brumer's property loss damages will not be excluded.

## D. General Damages

In the third supplemental disclosures, Plaintiffs identified that Kasprzak was seeking $2,821,023.20 in general damages, and Brumer was seeking $150,000 in general damages. (ECF No. 39-16 at 14.)

Gray seeks a sanction excluding Plaintiffs' general damages on the basis that they were not disclosed until the last day of discovery, and they seek very specific amounts and the basis of the calculation was not provided.

The court finds, however, that Rule 26(a)(1)(A)(iii) does not require a computation of general damages for pain and suffering or emotional distress.

Courts within this district have held that this is the case because such damages are subjective and do not lend themselves to computation. *See Sandoval v. Las Vegas Met. Police Dept.*, Case No. 2:10-cv-01196-RCJ-PAL, 2017 WL 89560, at *3 (D. Nev. Jan. 10, 2017); *Crocker v. Sky View Christian Acad.*, Case No. 3:08-cv-00479-LRH-VPC, 2009 WL 77456, at *2 (D. Nev. Jan. 8, 2009) ("[B]ecause emotional suffering is personal and difficult to quantify, damages for emotional anguish likely will be established predominantly through the plaintiffs' testimony concerning the emotional suffering they experienced, not through the[ ] type of documentary evidence or expert opinion relied upon to make a Rule 26(a)(1)(A)(iii) disclosure of a computation of damages[.]") (citations omitted); *see also Williams v. Trader Pub. Co.*, 218 F.3d 481, 486 n. 3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kid of calculation disclosure contemplated by Rule 26(a)(1)(C).").

This is a diversity case, and the rationale discussed above is also supported by Nevada law.

Nevada Jury Instruction 5.1 governs the measure of damages to compensate an injured plaintiff, which includes "[t]he physical and mental pain, suffering, anguish, disability, and loss of enjoyment of life endured by the plaintiff from the date of the [accident] to the present" and "[t]he physical and mental pain, suffering, anguish, disability, and loss of enjoyment of life which you believe plaintiff will be reasonably certain to experience in the future as a result of the [accident]."

Nevada Judy Instruction 5.2 provides: "No fixed standard exists for deciding the amount of pain and suffering damages. Nor is the opinion of any witness required as to the amount of such reasonable compensation. You must use your judgment to decide upon a reasonable amount based on the evidence and your common sense."

Insofar as Plaintiffs elected to include a general damages computation, Gray contends that she did not have adequate notice of the basis for the general damages component that presented a very specific number (at least for Kasprzak). The law cited above does not require a computation and confirms that in Nevada there is not a fixed standard for calculating these damages. In any event, Mr. Loosvelt confirmed that he never picked up the phone or otherwise inquired of Mr. Medrala between February 20, 2019, when the third supplemental disclosures were served and the time of the hearing, to ask for the basis of the general damages computation. Mr. Medrala nevertheless explained the basis for the computation at the hearing: he simply doubled the amount of the special damages for each plaintiff. Plaintiffs also point out that they made their claims for pain and suffering damages known in their complaint and responses to discovery, and were questioned about them in their depositions.

In sum, Plaintiffs' general damages computation will not be excluded; instead, the jury is tasked with determining the amount of monetary compensation the Plaintiffs are entitled to recover for general damages.

**E. Request for Fees**

Gray asks the court to award her all of the reasonable fees and costs incurred as a result of the failure to make the Rule 26(a)(1)(A)(iii) disclosures.

Rule 37(c)(1) provides that a party that fails to disclose information under Rule 26(a) or (e) is not allowed to use that information at trial "unless the failure was substantially justified or is

harmless." Fed. R. Civ. P. 37(c)(1). In addition, or instead of that sanction, the court "*may* order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A) (emphasis added).

Here, the court concluded that the disclosure of the damages computation on the last day of discovery was harmless, with the exception of two components of the damages computation: the doubling of the future treatment cost estimate of $682,436 for Kasprzak, and the $50,000 in future treatment for Brumer. The court has precluded those components of the damages computation under Rule 37(c)(1), which appears to be an adequate sanction under the circumstances. The sanction of fees and costs in Rule 37(c)(1)(A) is discretionary ("[i]n addition to or instead of this sanction" and the court "*may* order payment of the reasonable expenses"). Exercising its discretion, the court declines to impose an additional sanction requiring the payment of expenses and costs under Rule 37(c)(1)(A).

**F. Motion for Partial Summary Judgment**

Since the court has ordered that Plaintiffs may proceed with presenting their case to a jury as to certain components of their damages, but not others, it appears that the motion for partial summary judgment "for lack of damages" is rendered moot.

### III. CONCLUSION

(1) Gray's Motion to Preclude Untimely Disclosed Damages (ECF No. 39) is **DENIED** insofar as she asks the court to exclude *all* of Plaintiffs' damages; however, the motion is **GRANTED** with respect to the following damages components that Gray was not adequately apprised of prior to the last day of discovery:

      (A) $682,436 of the $1,364,872 in future damages disclosed for Kasprzak; and

      (B) $50,000 in future damages disclosed for Brumer.

(2) Gray's request for fees and costs in connection with the motion is **DENIED**.

(3) The motion for partial summary judgment for lack of damages (ECF No. 40) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated: June 20, 2019.

William G. Cobb
William G. Cobb
United States Magistrate Judge